IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TRAVIS SILVER,

        Petitioner,

vs.                                              No. CV-19-284 WJ/JHR

DANIEL PETERS, Warden,

        Respondent.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter comes before Court on Plaintiff's amended *Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody* [Doc. 10], filed on July 17, 2019. The Honorable William P. Johnson referred this case to me to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case. [Doc. 6]. Having reviewed the parties' submissions, the record, and the relevant law, I find that Mr. Silver falls short on each required showing and recommend, after consideration of the parties' objections if any, that the Court deny the requested relief.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

In August 2013, Mr. Silver began a sexual relationship with his step-daughter, S.G., who was then twelve years old. [Doc. 16-1, p. 173]. The relationship continued through May 2014 when S.G. was thirteen years old. [*Id.*].

In May 2014, Detective Justin Rieker of the San Juan County Sheriff's Department learned of the sexual relationship between S.G. and Mr. Silver and obtained a warrant for Mr. Silver's arrest. [*Id.*]. Detective Rieker telephoned Mr. Silver and asked to interview him about the matter.

---

[1] On the record currently before the Court, the facts in this section are undisputed, except as noted.

[*Id.*]. According to Mr. Silver, he advised Detective Rieker that he wanted to speak with a lawyer if charges were pending against him and Detective Rieker told him that no charges were pending. [*Id.*; Doc. 10, p. 17]. According to Detective Rieker, Mr. Silver never requested a lawyer. [Doc. 16-1, pp. 173-174]. Detective Rieker could not recall whether Mr. Silver asked if charges were pending, but he admitted that he did not tell Mr. Silver that he had already obtained a warrant for Mr. Silver's arrest. [*Id.*, p. 174].

Mr. Silver agreed to meet Detective Rieker at a park that afternoon. [*Id.*]. During the meeting, Mr. Silver sat in the front seat of Detective Rieker's patrol vehicle. [*Id.*]. At the outset of the interview, which was audio-recorded, Detective Rieker told Mr. Silver that he was free to go at any time and also read Mr. Silver his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). [Doc. 16-1, p. 174]. However, having already obtained an arrest warrant, Detective Rieker had had no intention of allowing Mr. Silver to leave. [*Id.*]. Detective Rieker confronted Mr. Silver regarding his relationship with S.G. [*Id.*]. Mr. Silver steadfastly denied the relationship was sexual in nature. [*Id.*]. After approximately thirty-five minutes, Detective Rieker decided that the interview was going nowhere and arrested Mr. Silver. [*Id.*]. Without any additional questioning, Mr. Silver confessed to having a sexual relationship with S.G. and, over the next hour, divulged details of that relationship. [*Id.*]. Mr. Silver acknowledged that his confession would likely result in a long prison term but explained that he had decided to confess because S.G. was the love of his life and he did not want to deny his love for her. [*Id.*].

Mr. Silver was charged with several counts of Criminal Sexual Penetration of a Minor (CSPM) in violation of NMSA 1978, Section 30-9-11(D)(1), (G)(1) (2009). [*Id.*, p. 175]. Before trial, he moved to suppress his confession and the motion was denied. [*Id.*, pp. 10-11, 18]. During the trial S.G. testified that she and Mr. Silver had repeatedly engaged in sexual intercourse; her

little brother, X.C., testified that on one occasion he had seen Mr. Silver lying on top of S.G. "going back and forth"; and a redacted version of the recording of Mr. Silver's interview with Detective Rieker was played for the jury.[2] [*Id.*, p. 175]. The jury found Mr. Silver guilty of two counts of CSPM involving a minor under the age of thirteen, and two counts of CSPM involving a minor between thirteen and sixteen years of age. [*Id.*, pp. 1-2]. Mr. Silver was sentenced to thirty-five and a half years in prison. [*Id.*, p. 5].

Mr. Silver appealed his convictions arguing that: (1) the district court erred by not suppressing his confession, (2) the district court improperly instructed the jury, and (3) his counsel was ineffective. [*Id.*, pp. 40-41, 85-130]. The New Mexico Court of Appeals rejected these arguments and affirmed Mr. Silver's convictions. [*Id.*, pp. 176, 178, 182, 184, 191, 193, 199, 202-203]. Mr. Silver petitioned the New Mexico Supreme Court for a Writ of Certiorari. [*Id.*, pp.209-223]. The Petition was denied. [*Id.*, pp. 224-225]. Mr. Silver did not seek state habeas relief.

Mr. Silver filed his Petition for federal habeas relief on March 28, 2019. [Doc. 1]. He amended the Petition on July 17, 2019. [Doc. 10]. The issues raised in Mr. Silver's habeas Petition are nearly identical to those raised on direct appeal. [Doc. 10, pp. 16-30]. Specifically, Mr. Silver asserts the following grounds for relief: (1) the confession should have been suppressed because (a) it was made in violation of *Miranda*, (b) it was made involuntarily, and (c) it was made in violation of his Sixth Amendment right to counsel; (2) the trial court mis-instructed the jury, resulting in confusion; and (3) his trial counsel was ineffective. [Doc. 10, pp. 16-30].

---

[2] The recording was redacted to eliminate references to Mr. Silver's previous time in prison. [Doc. 16-1, p. 175].

II.     **ANALYSIS**

A.  **Mr. Silver's Challenge to Jury Instruction on the Elements of CSPM Presents a State Law Claim With no Basis for Federal Habeas Relief**

It is not the province of the federal courts to re-examine state-court determinations of state-law questions. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Accordingly, federal habeas relief is not available for errors of state law. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Absent a specific constitutional violation, federal habeas review of state court errors is limited to whether the error "so infected the [proceeding] with unfairness as to make the resulting conviction a denial of due process." *Lewis*, 497 U.S. at 780 (quotation omitted). Pertinent here, the Tenth Circuit has recognized that "as a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law." *Patton v. Mullin*, 425 F.3d 788, 807 (10th Cir. 2005) (alteration in original) (internal quotation marks omitted).

Here, the jury instruction to which Mr. Silver objects was based on New Mexico's Uniform Jury Instructions for CSPM of a child under age 13, UJI 14-957 NMRA, and CSPM of a child between the ages of thirteen and sixteen, UJI 14-962 NMRA. [Doc. 16-1, p. 194]. The uniform instructions offer two alternatives for the phrasing of the first element of CSPM (penetration) which differ, and should be crafted with specificity in each case, based on the nature of the act at issue. *See* UJI 14-957; UJI 14-962. The instruction given in this case did not include one specifically crafted statement for the first element of CSPM, but rather included two alternative statements. [Doc. 16-1, p. 24]. Based on the language of the uniform instructions, the use notes, and applicable New Mexico law, the New Mexico Court of Appeals determined that the trial court erred in giving the instruction with two alternative formulations for the first element of CSPM.

4

[*Id.*, p. 196]. However, because the alternative formulations of the element described the same act, the court held that the error was harmless. [*Id.*, pp. 194-198].

The trial court's decision and the decision of the New Mexico Court of Appeals on this issue involved interpretation of New Mexico's Uniform Jury Instructions and other applicable New Mexico law. [*Id.*, pp. 195-198]. While Mr. Silver argues that the instructional error resulted in jury confusion and constituted fundamental error, he has not articulated a distinct basis for a constitutional claim. [*Id.*, pp. 22-24]. I conclude that Mr. Silver has failed to demonstrate or allege a cognizable constitutional claim based on the erroneous jury instruction for which federal habeas relief is available. *See Lewis*, 497 U.S. at 780; *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996) (acknowledging that a petitioner may not "transform a state-law issue into a federal one merely by asserting a [constitutional] violation").

## B. Mr. Silver Has Exhausted the Administrative Remedies for Some, but Not All of His Remaining Claims

Before a state prisoner may proceed in a federal habeas corpus petition, the prisoner must establish that he has exhausted any remedies available in the state courts. 28 U.S.C. § 2254(b)(1). A federal issue is considered exhausted when "it has been properly presented to the highest state court, either by direct review of the conviction or in a postconviction attack." *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994). The claim must be "fairly presented to the state courts" to allow them the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Prendergast v. Clements*, 699 F.3d 1182, 1184 (10th Cir. 2012). The petitioner has the burden of demonstrating that he has exhausted available state court remedies. *See McCormick v. Kline*, 572 F.3d 841, 851 (10th Cir. 2009).

A habeas petition that contains both exhausted and unexhausted claims is called a "mixed petition." *Pliler v. Ford*, 542 U.S. 225, 227 (2004). In general, a federal court may not adjudicate

a mixed habeas petition and must dismiss such a petition in its entirety. *See Rose v. Lundy*, 455 U.S. 509, 522 (1982). However, in appropriate circumstances, the federal court has other options. First, the court may stay and abate the habeas action, allowing the petitioner to return to state court to exhaust the unexhausted claims. *See Rhines v. Weber*, 544 U.S. 269, 277 (2005). This course is appropriate only if the petitioner shows good cause for the failure to exhaust, the claims are potentially meritorious, and there is no evidence that the petitioner was intentionally dilatory in pursuing the unexhausted claims. *Id.* at 278. Next, a petitioner may choose to dismiss the unexhausted claims and proceed only on the claims that were properly exhausted. *Wood v. McCollum*, 833 F.3d 1272, 1273 (10th Cir. 2016). Finally, the Court may deny the petition on the merits in its entirety despite the failure to exhaust. 28 U.S.C. § 2254(b)(2). This course is an adjudication on the merits and a denial of both the exhausted and unexhausted claims. *See Moore v. Schoeman*, 288 F.3d 1231, 1235-36 (10th Cir. 2002).

Here, Mr. Silver has failed to exhaust his administrative remedies to certain of his claims regarding the suppression of his confession and ineffective assistance of counsel. Regarding the claim that his confession should have been suppressed, Mr. Silver makes three arguments: (1) his statements were not made voluntarily [Doc. Doc. 10, pp. 18-20]; (2) he should have been advised of *Miranda* rights a second time after he was arrested [Doc, 10, pp. 20-21]; and (3) his statements were obtained in violation of his Sixth Amendment right to counsel [Doc. 10, pp. 21-22]. While these arguments were raised on direct appeal, Mr. Silver did not raise the Sixth Amendment argument in his Petition for Writ of Certiorari to the New Mexico Supreme Court. [Doc. 10, pp. 30-31; Doc. 16-1, pp. 219-220].

With respect to his ineffective assistance of counsel claims, Mr. Silver asserts that his counsel was ineffective by: (1) stating during voir dire that "any man who rapes a child should be

put to death" [Doc. 10, p. 25]; (2) stating during voir dire that "the death penalty would be on the table" [*Id.*]; (3) failing to introduce letters from S.G. which showed her "intentions" [*Id.*]; (4) failing to let him testify [*Id.*]; (5) failing to object to the State's instructions to the jury [*Id.*]; and (6) failing to request supplemental clarifying jury instructions [*Id.*]. Mr. Silver's arguments that his counsel erred in stating during voir dire that "the death penalty would be on the table," in failing to object to the State's proposed jury instructions, and in failing to request supplemental clarifying instructions are raised for the first time in his habeas Petition and were not presented to the New Mexico Court of Appeals or the New Mexico Supreme Court.

Exhaustion requires that each claim, and each portion of each claim, be submitted to the highest state court for review. *Jernigan v. Jaramillo*, 436 Fed. App'x 852, 855-56 (10th Cir. 2011) ("[F]ederal district courts not only must dismiss entirely unexhausted habeas corpus petitions and individual unexhausted claims but also, generally, must dismiss 'mixed' habeas corpus petitions— *i.e.*, petitions containing both exhausted claims and even a single unexhausted claim or portion of a claim—pending exhaustion of the unexhausted claims."). Accordingly, the claims contained in Mr. Silvers Petition that were not presented to the New Mexico Court of Appeals and the New Mexico Supreme Court have not been exhausted under § 2254. Nonetheless, as explained in further detail below, I conclude that all of Mr. Silver's claims, including the unexhausted claims, are without merit and I recommend that the Court ignore the exhaustion requirement as to the unexhausted claims and deny the Petition on the merits. *See Fairchild v. Workman*, 579 F.3d 1134, 1156 (10th Cir. 2009) (recognizing that a court presented with a mixed petition may ignore the exhaustion requirement altogether and deny the petition on the merits if it finds that none of the claims are meritorious).

### C.  Mr. Silver has not Established That he is Entitled to Relief Under § 2254

Federal courts have statutory authority under § 2254 to issue habeas corpus relief for persons in state custody. *See Harrington v. Richter*, 562 U.S. 86, 97-98 (2011). The Antiterrorism and Effective Death Penalty Act circumscribes review of federal habeas claims that were adjudicated on the merits in state-court proceedings. *Hooks v. Workman*, 689 F.3d 1148, 1163 (10th Cir. 2012). A federal court may only grant relief from a state court decision where the petitioner demonstrates that the trial court's resolution of his claims was either contrary to clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(1), (2)). In analyzing the state court's decision, this Court may only review the record that was before the state court and all factual findings are presumed correct unless rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)).

Under § 2254(d)(1), the threshold question is whether the applicant is seeking to invoke a rule of law that was clearly established by the Supreme Court at the time the conviction became final. *See Byrd v. Workman*, 645 F.3d 1159, 1165 (10th Cir. 2011); *see also Williams v. Taylor*, 529 U.S. 362, 390 (2000). If the law was clearly established, then the court determines whether the state court decision was "contrary to or involved an unreasonable application of that clearly established law." *Byrd*, 645 F.3d at 1165 (internal quotation marks and citation omitted).

First, a state-court decision is contrary to clearly established law if the state court applies a rule different from the governing law set forth by the Supreme Court or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *See Hooks*, 689 F.3d at 1163. The state court is not required to cite to, or even be aware of, Supreme

Court decisions, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).

Second, a state-court decision is an unreasonable application of clearly established federal law when the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of a petitioner's case. *See Hooks*, 689 F.3d at 1163. AEDPA precludes issuance of a writ simply because the federal court concludes in its independent judgment that the state court applied the federal law erroneously or incorrectly. *See Byrd*, 645 F.3d at 1166. Instead, the application must also be objectively unreasonable. *See id.*

In "deciding whether a state court's decision involved an unreasonable application of federal law or was based on an unreasonable determination of fact" a federal habeas court must "train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims and give appropriate deference to that decision." *Wilson v. Sellers*, 138 S. Ct. 1188, 1191-92 (2018). "This is a straightforward inquiry when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion. In that case, a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.* As long as fair minded jurists could disagree as to the correctness of the state court's decision, this highly deferential standard for evaluating state-court rulings "demands that state-court decisions be given the benefit of the doubt." *Hooks*, 689 F.3d at 1163; *see Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

**1.  Mr. Silver Has Not Established That His Confession Should Have Been Suppressed**

**a.  Mr. Silver Has Not Shown That his Confession was Obtained in Violation of *Miranda***

The Fifth Amendment states: "No person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. In *Miranda*, the Supreme Court "recognized

that custodial interrogations, by their very nature, generate compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Moran v. Burbine*, 475 U.S. 412, 420 (1986) (internal quotation marks and citation omitted); *Miranda*, 384 U.S. at 467. "To combat this inherent compulsion, and thereby protect the Fifth Amendment privilege against self-incrimination, *Miranda* imposed on the police an obligation to follow certain procedures in their dealings with the accused." *Moran*, 475 U.S. at 420. "In particular, prior to the initiation of questioning, they must fully apprise the suspect of the State's intention to use his statements to secure a conviction and must inform him of his rights to remain silent and to have counsel present ... if [he] so desires." *Id.* (alteration in original) (internal quotation marks and citation omitted). If police interrogate a suspect in custody without informing him of his *Miranda* rights, his responses cannot be introduced into evidence at trial to establish his guilt. *Berkemer v. McCarty*, 468 U.S. 420, 429 (1984). "Beyond this duty to inform, *Miranda* requires that the police respect the accused's decision to exercise the rights outlined in the warnings." *Id.* "If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, [or if he] states that he wants an attorney, the interrogation must cease." *Miranda*, 384 U.S. at 473-474; *see also Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981).

*Miranda* "applies only in the context of custodial interrogation." *Montejo v. Louisiana*, 556 U.S. 778, 795 (2009). If the defendant is not in custody *Miranda* and its progeny "do not apply; nor do they govern other, noninterrogative types of interactions between the defendant and the State." *Id.* This is because noncustodial and noninterrogative situations "are the *least* likely to pose a risk of coerced waivers." *Id.* "When a defendant is not in custody, he is in control, and need only shut his door or walk away to avoid police badgering." Moreover, "noninterrogative interactions with the State do not involve the inherently compelling pressures that one might reasonably fear

could lead to involuntary waivers." *Id.* (internal quotation marks and citation omitted); *see Miranda*, 384 U.S. at 467.

Here, Mr. Silver acknowledges that he was advised of his *Miranda* rights prior to his interview with Detective Rieker. [Doc. 10, p. 17]. However, he argues that he should have been re-*Mirandized* after he was formally arrested.[3] [*Id.*, p. 20]. The New Mexico Court of Appeals rejected this argument holding that (1) the mere passage of time (approximately thirty minutes) between the *Miranda* warning and Mr. Silver's arrest did not invalidate the warning and (2) *Miranda* did not apply to the statements Mr. Silver made after his arrest since those statements were volunteered by Mr. Silver and not made in response to an interrogation by Detective Rieker. [Doc. 16-1, pp. 181-182].

Mr. Silver does not argue or provide any authority indicating that these holdings are contrary to established federal law. [Doc. 10, pp. 20-21]. He simply reiterates the argument made on direct appeal; that the *Miranda* warning should have been re-issued prior to his arrest because custodial interrogations are inherently coercive. [*Id.*, citing *New York v. Quarles*, 467 U.S. 649, 654 (1984) ("The *Miranda* Court, however, presumed that interrogation in certain custodial circumstances[4] is inherently coercive and held that statements made under those circumstances are inadmissible unless the suspect is specifically informed of his Miranda rights and freely decides to forgo those rights.") and *Minnesota v. Murphy*, 465 U.S. 420, 433 (1984) ("Custodial arrest is said to convey to the suspect a message that he has no choice but to submit to the officers' will and to confess.")].

---

[3] On direct appeal, Mr. Silver also argued that he invoked his right to counsel during his initial call with Detective Rieker, by telling the detective that he wanted an attorney if charges were pending against him. [Doc. 16-1, pp. 108-111]. Mr. Silver does not raise this issue here as grounds for federal habeas relief. [*See generally* Doc. 10].

Mr. Silver is correct that *Miranda* warnings are required as a procedural safeguard against involuntary self-incrimination due to the coercive nature of custodial interrogation. *Moran*, 475 U.S. at 420. However, once a *Miranda* warning has been issued, it need not be re-issued unless the circumstances have changed so significantly that the suspect's answers are no longer voluntary, or the he is no longer knowingly and intelligently relinquishing his rights. *See Mitchell v. Gibson*, 262 F.3d 1036, 1057–58 (10th Cir. 2001); *see also Wyrick v. Fields*, 459 U.S. 42, 47 (1982) (per curiam)). This is true even where the warning is given during the investigative process prior to formal arrest. *See Mitchell*, 262 F.3d at 1058 (finding that a defendant's *Miranda* rights were not violated by the admission of the post-custodial statements he made during his interrogation even though he was advised of his *Miranda* rights before "he progressed from a witness to a suspect during the interview" and was not advised again "after he was no longer free to leave."); *United States v. Ford*, No. 89-20049-01, 1989 WL 84517, at *2 (D. Kan. July 19, 1989) ("By *Mirandizing* defendant and asking defendant if he understood his rights, [the agent] complied with the requirements of *Miranda*. Additionally, since the agent's conversation with defendant was continuous, there was no need to re-*Mirandize* him when he was formally placed under arrest.").

In this case, Mr. Silver was advised of his *Miranda* rights before his interview with Detective Rieker. [Doc. 16-1, p. 174]. The conversation between the two was continuous and there is no indication in the record that Mr. Silver no longer understood his rights once he was formally placed under arrest. [CD 11/18/2015 3:46:33 – 3:46:45]. As the New Mexico Court of Appeals pointed out, less than approximately thirty minutes elapsed between the issuance of the *Miranda* warning and the beginning of Mr. Silver's confession. [Doc. 16-1, pp. 181, 182]. Mr. Silver does not dispute that he began confessing voluntarily after his arrest without being prompted or questioned by Detective Rieker. [Doc. 10, pp. 20-21; Doc. 16-1, p. 174].

12

Given the totality of these circumstances, I conclude that Mr. Silver has not shown that the New Mexico Court of Appeals' determination on this issue constitutes an "unreasonable application of federal law or was based on an unreasonable determination of fact." *Wilson*, 138 S. Ct. 1188, 1191-92; *Mitchell*, 262 F.3d at 1058 ("In sum, the totality of the circumstances does not show that [the petitioner] was unaware of his rights, or that he was naive about the process in which he was involved. Consequently, his rights were not violated by the admission of the post-custodial statements he made during his interrogation, notwithstanding his failure to receive warnings again at that time.").

**b.  Mr. Silver has not Shown That his Confession was Involuntary**

Even absent a *Miranda* violation, a confession must be suppressed when the totality of the circumstances demonstrate that the confession was involuntary. The use of an otherwise involuntary confession violates a criminal defendant's right to due process under the Fourteenth Amendment. *Blackburn v. Alabama*, 361 U.S. 199, 205 (1960); *Mincey v. Arizona*, 437 U.S. 385, 398 (1978). A confession is coerced or involuntary if the suspect's will "was overborne at the time he confessed." *Lynumn v. Illinois*, 372 U.S. 528, 534 (1963). Coercion can be mental or physical, but to render a statement involuntary, coercion must exist to such a degree that the statement is not "the product of an essentially free and unconstrained choice by its maker." *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973); *see also Blackburn*, 361 U.S. at 206.

The test of voluntariness is based on the totality of the circumstances, considering both the characteristics of the suspect and the details of the interrogation. *Schneckloth*, 412 U.S. at 226; *United States v. Lopez*, 437 F.3d 1059, 1063 (10th Cir. 2006). The court must determine whether the suspect's confession is the product of an essentially free and unconstrained choice or if his will was overborne by physical or psychological coercion, threats, or by improper inducement. *See*

13

*Lopez*, 437 F.3d at 1063; *United States v. Erving L.*, 147 F.3d 1240, 1248-49 (10th Cir. 1998). A confession is only involuntary if the police use coercive activity to undermine the suspect's ability to exercise free will. *Erving L.*, 147 F.3d at 1249.

No single factor is determinative in the voluntariness inquiry. *Lopez*, 437 F.3d at 1063. Relevant factors include (1) the suspect's age, education, and intelligence; (2) whether the suspect has been arrested and given *Miranda* warnings on earlier occasions, indicating previous experience with the criminal justice system; (3) the length of the detention and questioning; (4) the nature of the detention and questioning, such as whether threats or promises of leniency were made; (5) any advice of a suspect's constitutional rights; (6) the use of physical punishment; and (7) whether the suspect confessed to the crime or consistently denied any involvement in the crimes throughout the interview. *See Schneckloth*, 412 U.S. at 226; *United States v. Carrizales-Toledo*, 454 F.3d 1142, 1153 (10th Cir. 2006); *Lopez*, 437 F.3d at 1063-65; *United States v. Chalan*, 812 F.2d 1302, 1307-08 (10th Cir. 1987). A suspect's personal characteristics are only relevant if the court first concludes that the officer's conduct was coercive. *Lopez*, 437 F.3d at 1064.

Here, Mr. Silver claims that Detective Rieker coerced his confession by (1) telling Mr. Silver he was free to leave, when in fact, Detective Rieker had a warrant for Mr. Silver's arrest and did not intend to let him leave and (2) encouraging Mr. Silver to admit to having a sexual relationship with S.G. by suggesting that there might be a justification for the relationship, or that the relationship might be viewed differently if S.G. willingly participated. [Doc. 10, pp. 19-20]. Essentially, Mr. Silver argues that by telling him he was free to leave and implying that there might be some legal or moral justification for Mr. Silver's actions, Detective Rieker was trying to create an atmosphere in which Mr. Silver felt comfortable and was willing to confess "without any real understanding of the legal consequences of doing so." [Doc. 10, p. 18]. As the New Mexico Court

of Appeals noted, the record does not support that Mr. Silver's claim that he was coerced and that he did not understand the legal consequences of his confession.

Prior to any questioning, Mr. Silver was given the *Miranda* warning. [CD 11/18/2015 2:01:13 – 2:01:30]. As part of this warning, Detective Rieker advised Mr. Silver that his statements could be used against him in court, and Mr. Silver affirmed that he understood. [*Id.*]. Detective Rieker's statements to Mr. Silver, that he was free to leave and regarding any potential justification for a sexual relationship with S.G., were made during the initial part of the interview, prior to Mr. Silver's arrest. [*Id.*, at 2:16:39 – 2:32:50]. However, it was during this phase of the interview that Mr. Silver steadfastly denied any sexual involvement with S.G. [*Id.*].

It was not until after he was placed under arrest, that Mr. Silver, unprompted by Detective Rieker, began to share the details of his sexual relationship with S.G. [Doc. 16-1, pp. 174, 182, 190; CD 11/18/2015 2:33:10]. Mr. Silver described how the relationship began with kissing and handholding and soon progressed to sexual intercourse. [CD 11/18/2015 2:34:50-2:43:20]. Mr. Silver stated that he knew he should not be having a sexual relationship with S.G. [CD 11/18/2015 2:38:36, 2:42:15]. Referring to the consequences of confessing, Mr. Silver stated, "I know what [] I'm doing; I'm digging a hole for myself, but at the time I didn't feel like it was wrong.... we were a couple." [CD 11/18/2015 32:47:50-2:47:52]. He also said, "I know it's wrong in the law's eyes, but I don't regret it." [CD 11/18/2015 3:36:41-3:36:50]. Mr. Silver acknowledged that he faced significant prison time. [CD 11/18/2015 2:57:22; 3:00:07-3:00:15]. At one point during his confession, he calculated aloud the likely prison term that he might face, including a habitual criminal enhancement. [Doc. 16-1, p. 191]. Mr. Silver explained that he had decided to confess because S.G. was the love of his life, and he did not want to deny his love for her. [CD 11/18/2015 3:37:20-3:37:38].

Based on this evidence, the New Mexico Court of Appeals concluded that Mr. Silver "did not confess because he was deceived about the consequences of doing so." [Doc. 16-1, p. 191]. "To the contrary, [Mr. Silver] was well aware that by confessing to having sex with his minor stepdaughter he was bringing serious legal consequences on himself, but he decided to do so anyway for reasons of his own." [*Id.*]. To the extent that Mr. Silver argues that his formal arrest was coercive because it created "an interrogation environment…for the purpose of subjugating [him] to the will of the examiner" [Doc., p. 20], such reasoning was also rejected by the New Mexico Court of Appeals, which concluded that Mr. Silver was not subject to custodial interrogation since he volunteered his confession *after* being placed under arrest. [*Id.*, p. 182].

In seeking habeas relief, Mr. Silver largely restates the arguments made on this issue to the New Mexico Court of Appeals without challenging the court's factual determinations or explaining how the court's decision contravenes established federal law. [Doc. 10, pp. 18-20]. The record evidence in this case shows that: a *Miranda* warning was issued before Mr. Silver's interview [CD 11/18/2015 2:01:13 – 2:01:30]; Mr. Silver's confession was made approximately thirty minutes later [Doc. 16-1, pp. 174, 182, 190; CD 11/18/2015 2:33:10]; the confession was not compelled by threats, physical intimidation, or promises of leniency by Detective Rieker [*Id.*]; Mr. Silver has prior criminal convictions which suggests that he is familiar with the criminal justice system and his *Miranda* rights [Doc. 16-1, pp. 1-2]; and Mr. Silver made statements indicating that he understood the legal consequences of admitting to having a sexual relationship with S.G. [Doc. 16-1, pp. 174, 182, 190; CD 11/18/2015 2:33:10; 2:57:22; 3:00:07-3:00:15; Doc. 16-1, p. 191].

Because this evidence supports the New Mexico Court of Appeals' determination that Mr. Silver's confession was made voluntarily and Mr. Silver has not argued or demonstrated that the

New Mexico Court of Appeals' determination was contrary to clearly established federal law or based on an unreasonable determination of the facts, I conclude that Mr. Silver has not established that he is entitled to federal habeas relief on this issue. *See* § 2254(d)(1), (2)).

### c.  Mr. Silver has not Shown That his Right to Counsel was Violated

Mr. Silver argues that his confession should have been suppressed because it was obtained in violation right to his Sixth Amendment right to counsel. [Doc. 10, p. 21]. Mr. Silver suggests that he was entitled to have counsel present during his May 16, 2014 interview with Detective Rieker because the right attached on May 14, 2014 when a criminal complaint was filed, and a warrant was issued for his arrest. [*Id.*]. However, as the New Mexico Court of Appeals noted, Mr. Silver's Sixth Amendment right to counsel did not attach until the criminal information was filed May 30, 2014. [Doc. 16-1, p. 193].

The Sixth Amendment provides that "[i]n all criminal *prosecutions*, the accused shall enjoy the right ... to have the assistance of counsel for his defence [sic]." U.S. Const. amend VI (emphasis added). Accordingly, "[b]y its very terms, [the Sixth Amendment right to counsel] becomes applicable only when the government's role shifts from investigation to accusation." *Moran*, 475 U.S. at 430. The Supreme Court has consistently held that the Sixth Amendment right to counsel does not attach until the initiation of formal criminal proceedings in a court of law by way of preliminary hearing, indictment, information, or arraignment. *Rothgery v. Gillespie County, Texas*, 554 U.S. 191, 198 (2008); *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991). Therefore, the Supreme Court has "pegged commencement of [the right to counsel] to the initiation of adversary judicial criminal proceedings." *Rothgery*, 554 U.S. at 198 (internal quotation marks and citation omitted); *see United States v. Gouveia*, 467 U.S. 180, 188 (1984); *United States v. Calhoun*, 796 F.3d 1251, 1254 (10th Cir. 2015) (holding that a defendant's Sixth Amendment right to counsel did not attach

until the date he was formally charged by way of indictment); *see also Doggett v. United States*, 505 U.S. 647, 664 (1992) ("For purposes of the right to counsel, an "accused" must *in fact* be accused of a crime; unlike the speedy trial right, [the right to counsel] does *not* attach upon arrest.").

Mr. Silver has not challenged the factual basis for the New Mexico Court of Appeals' determination that his Sixth Amendment right to counsel was not implicated by his May 14, 2014 post-arrest confession, since the right to counsel attached upon filing of the criminal information on May 30, 2014. [Doc. 10, p. 21]. Nor has he argued that the court's conclusion is contrary to established federal law. [*Id.*]. Accordingly, he has not met his burden to show that he is entitled to federal habeas relief on the grounds that his confession was obtained in violation of his Sixth Amendment right to counsel.

In sum, I conclude Mr. Silver has not established that he is entitled to federal habeas relief on any of the asserted grounds supporting the claim that his confession should have been suppressed.

**2. Mr. Silver has not Established That his Counsel Provided Ineffective Assistance**

Mr. Silver claims that he his counsel provided ineffective assistance by: (a) making prejudicial statements during voir dire; (b) failing to introduce certain evidence; (c) preventing him from testifying; and (d) failing to object to the prosecution's elements instruction and failing to request a clarifying instruction. [Doc. 10, pp. 24-25].

The Sixth Amendment right to counsel includes the right to effective assistance of counsel during criminal proceedings. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). For federal habeas petitions brought under § 2254(d), *Strickland* is clearly established federal law. *See Williams*, 529 U.S. at 390. To succeed under *Strickland*, a habeas petitioner must show that his

"counsel's representation fell below an objective standard of reasonableness," and that "the deficient performance prejudiced the defense." *Strickland,* 466 U.S. at 687-88. Courts "may address the performance and prejudice components in any order but need not address both if [the petitioner] fails to make a sufficient showing of one." *Cooks v. Ward*, 165 F.3d 1283, 1292-93 (10th Cir. 1998).

To establish *Strickland's* first prong, a petitioner must overcome the presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (internal quotation marks and citation omitted). This requires the petitioner to establish that the "attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105 (internal quotation marks and citation omitted). To satisfy the prejudice prong, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

For counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong. *Hoxsie v. Kerby*, 108 F.3d 1239, 1246 (10th Cir. 1997). In applying this test, the Court must give considerable deference to counsel's strategic decisions, recognizing that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 690.

a. **Mr. Silver has not Shown That Counsel's Statements During Voir Dire Constituted Ineffective Assistance of Counsel**

Mr. Silver claims that during voir dire his counsel told prospective jurors that "any man who rapes a child should be put to death," and in such circumstances, "the death penalty would be on the table." [Doc. 10, p. 25]. Mr. Silver argues that these statements reflected his counsel's bias toward him and were prejudicial in light of the charges. [*Id.*]. In examining counsel's statements to the voir dire panel, the context is informative.

During the prosecution's voir dire, several prospective jurors said that they could not be fair in a case involving sexual abuse of a child and expressed hostility to child abusers. [CD 11/18/2015 9:09:25 – 9:19:34]. One prospective juror expressed her opinion that men who sexually abuse children should be castrated. [CD 11/18/2015 9:19:34]. During his voir dire, defense counsel said, "First of all, I absolutely agree with [the prospective juror] that any man who rapes a child should not just be castrated but should be given the death penalty." [CD 11/18/2015 9:32:24 – 9:32:34]. He added, "If I had control of the laws of the State of New Mexico, anyone who raped a child, forcibly raped a child, the death penalty would be on the table as a punishment, and they'd be given one appeal. That's how I feel; that's the truth." [CD 11/18/2015 9:32:37 – 9:32:53]. However, counsel emphasized that Mr. Silver's case was "not a rape case, but a consent case." [CD 11/18/2015 9:33:42 – 9:33:46]. He suggested that after hearing the evidence, some jurors might be convinced that the relationship between Mr. Silver and S.G. was actually "a love affair." [CD 11/18/2015 9:33:54 – 9:33:57].

The New Mexico Court of Appeals held that these statements, taken in context, were consistent with counsel's strategy and theory of the case. [Doc. 16-1, pp. 200-203]. Throughout trial, counsel focused on the language in the CSPM statute requiring the jury to find that Ms. Silver *caused* S.G. to engage in sexual intercourse, and attempted to persuade the jury that S.G., and not

Mr. Silver, had *caused* the sexual intercourse between them to occur. *See* § 30-9-11(A) ("Criminal sexual penetration is the unlawful and intentional *causing* of a person to engage in sexual intercourse." (emphasis added)). The New Mexico Court of Appeals determined that this was not an unreasonable strategy in light of the circumstances. [Doc. 16-1, p. 202].

According to the court, counsel was "faced with the unenviable task of defending a case that was virtually impossible to defend." [*Id.*, p. 202]. Counsel knew that: "the jury would hear the recording of an hour-long, articulate statement by his client, confessing in detail to having sex with S.G. on multiple occasions"; S.G.'s testimony that she and Mr. Silver "had frequent sex"; and the testimony of S.G.'s little brother, X.C., that he witnessed Mr. Silver "having sex with S.G. in a hotel room." [*Id.*]. The court noted that even though a minor's consent is not a defense to a CSPM charge, counsel attempted to persuade the jury that S.G.'s undisputed consent to sexual relations with Mr. Silver meant that he did not *cause* the sexual relationship. [*Id.*].

The court considered counsel's remarks to the voir dire panel "as an attempt to establish credibility with the prospective jurors, and as part of an effort to persuade them that there was a relevant distinction between forcible rape and consensual sex with a minor," although legally there was no such distinction. [*Id.*]. The court concluded that Mr. Silver had not shown that "counsel's conduct fell below that of a reasonably competent attorney, or that no plausible, rational strategy supported his conduct." [*Id.*]. Additionally, given the "overwhelming strength of the [] case against [Mr. Silver], and the virtual certainty of a conviction," the court was not convinced that counsel's conduct prejudiced Mr. Silver. [*Id.*, pp. 202-203].

Mr. Silver has not challenged the New Mexico Court of Appeals' factual determinations or contended that its ruling on this issue is contrary to established federal law. Moreover, Mr. Silver does not explain, in light of counsel's trial strategy and the weight of evidence against Mr.

Silver, how counsel's representation was objectively unreasonable or how the result of the proceedings would have been different but for counsel's remarks to the voir dire panel. [Doc. 10, p. 25].

### b. Mr. Silver has not met his Burden with Respect to his Remaining Claims of Ineffective Assistance

Without citation to legal authority or the record and without any analysis, Mr. Silver claims that counsel was also ineffective in: (1) failing to introduce letters from S.G. showing her "intentions"; (2) "not letting [him] take the stand in [his] own defense"; and (3) "not objecting to the State's instructions to the jury [or] asking for supplemental instructions to provide clarification for the jury." [Doc. 10, p. 25]. Mr. Silver has not provided legal or factual support for these assertions. Nor has he articulated how counsel's alleged errors were objectively unreasonable or how the result of the proceedings would have been different but for the alleged errors. [*Id.*].

As Mr. Silver has even attempted to meet either prong of the *Strickland* analysis with regard to his ineffective assistance of counsel claims, I conclude that they cannot serve the basis for federal habeas relief. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 n.1 (10th Cir. 2005) (acknowledging that while pro se pleadings are liberally construed, courts will not "make arguments for pro se litigants or otherwise advocate on their behalf.").

### III.   RECOMMENDATION

For the foregoing reasons, I propose that the Court find that:

(1) Mr. Silver's claim regarding the jury instructions is not cognizable under § 2254;

(2) Mr. Silver has not demonstrated that the New Mexico Court of Appeals' conclusions
    regarding the suppression of his confession are contrary to established federal law; and

(3) Mr. Silver has not demonstrated that the New Mexico Court of Appeals' conclusions regarding his ineffective assistance of counsel claim are contrary to established federal law.

Therefore, I recommend that the amended *Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody* [Doc. 10], be DENIED, and that a certificate of appealability be DENIED.

_____
JERRY H. RITTER
UNITED STATES MAGISTRATE JUDGE

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).

**A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

---